### STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Plaintiff,

v.

### Donald NICHOLS and Jo Ann Nichols, Defendants,

and

### John Doe and Michael McCormick, Additional Defendants on Counterclaim.

### Civ. A. No. 4:86–cv–136–HLM.

United States District Court, N.D. Georgia, Rome Division.

March 8, 1989.

---

J. Clinton Sumner, Jr., Rogers, Magruder, Sumner, Brinson & Seigler, Rome, Ga., for State Auto. Mut. Ins. Co.

John W. Davis, Jr., Frank Milton Gleason, Gleason & Davis, Rossville, Ga., for Donald Nichols and Jo Ann Nichols.

## ORDER

HAROLD L. MURPHY, District Judge.

This case is before the Court on a motion for summary judgment of Plaintiff State Automobile Mutual Insurance Company (SAMI). For the reasons set forth below, the motion shall be GRANTED in part and DENIED in part.

### I. Factual Background

SAMI filed this declaratory judgment action in response to a claim for benefits made by Donald and Jo Ann Nichols (the Nichols [1]), parents of Donna Jean Nichols (Ms. Nichols), under Ms. Nichols's automobile insurance policy, following her death in her automobile.

The following tragic facts are undisputed. Ms. Nichols's body was found lying in a pool of blood in a parking lot in the early morning hours of February 14, 1985. She had been shot once in the head and once in the hand. Her car was found approximately two miles away, locked and unoccupied, a large pool of blood in the front passenger floorboard and blood splattered in the car. The investigating officer concluded that her head had been forced to the floorboard when she was shot.

Michael McCormick was convicted of first degree murder for killing Ms. Nichols.[2] The parties agree that McCormick drove Ms. Nichols in her car to the parking lot where she was found and that he shot her while she was in her car. After the murder, the car was driven twice through the pool of blood on the ground by her body.

After Ms. Nichols's death, the Nichols made a claim for benefits under Ms. Nichols's personal automobile insurance policy issued by SAMI. They seek recovery under the policy's personal injury protection provision, its uninsured motorists provision, and its medical payments coverage provision. They made demand for these payments and have counterclaimed for damages and compensation under these provisions in this action. Further, in their counterclaim, they seek damages from John Doe and Michael McCormick for Ms. Nichols's death. The summary judgment before the Court involves only the complaint of the plaintiff for declaratory judgment.

---

1. For convenience, the Nichols will be referred to herein as "the defendants," because the additional defendants on the counterclaim are not before the Court on this motion for summary judgment.

2. The parties have jointly submitted a transcript of the trial in which McCormick was convicted of Ms. Nichols's murder.

## II. Summary Judgment

SAMI moves for summary judgment on grounds that the insurance policy provisions did not provide coverage for Ms. Nichols's murder because her death was not an accident and did not arise out of the operation, maintenance or use of a motor vehicle. The defendants counter that under Georgia case law, her death was an accident, as seen from her perspective, and arose from the "use" of her vehicle, under the liberal construction of that term by the Georgia courts. The question thus is one of contract construction: whether the terms of the contract can be held to cover a situation such as that presented here, which resulted in Ms. Nichols's death. The relevant facts are undisputed.

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986).

Once the moving party has adequately supported its motion, the nonmovant then has the burden to show that summary judgment is improper, coming forward with specific facts showing a genuine dispute. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). It is no part of the Court's function to decide issues of genuine material fact but solely to determine whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The standard thus mirrors that used for a directed verdict: "whether the evidence presents a sufficient disagreement to require its submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d 213–14.

### A. Ms. Nichols's Personal Injury Protection and Uninsured Motorist Coverage

In its complaint for declaratory judgment, SAMI claims that neither the personal injury protection provisions (Count I) or the uninsured motorist provisions (Count II) of Ms. Nichols's insurance policy provided coverage for the damages sustained through her death. The personal injury protection provision provides in relevant part as follows:

The Company will pay personal injury protection benefits for:
(a) medical expenses,
(b) work loss,
(c) essential services expenses,
(d) funeral expenses, and
(e) survivor's loss,
incurred with respect to bodily injury sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance or use of a motor vehicle as a vehicle.

Exhibit A to the Complaint, § I.

The uninsured motorist provision reads in relevant part as follows:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of
1. Bodily injury sustained by a covered person and caused by an accident, and
2. Property damage caused by an accident. The owner or operator's liability

for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

*Id.*, "Endorsement."

Each provision requires the damages sustained be caused by an accident that arises out of the operation, maintenance or use of the motor vehicle, whether the vehicle is that of the insured (under the personal injury protection provision) or that of the uninsured motorist (under the uninsured motorist provision).

The defendants correctly contend that Ms. Nichols's death was an accident under Georgia insurance law. An intentional act may be deemed an accident, when, viewed from the perspective of the victim, it is something unforseen, unusual, and unexpected and not caused by the victim's own misconduct. *See American Protection Insurance Company v. Parker*, 150 Ga.App. 732, 733, 258 S.E.2d 540 (1979). Under Georgia law, Ms. Nichols's death was caused by an accident, as that policy term is construed by the courts.

The Nichols incorrectly contend, however, that Ms. Nichols's death arose from the operation, maintenance or use of her motor vehicle. Mindful of the general rule that ambiguous terms in an insurance policy must be construed against the drafter of the contract, *see Parker*, 150 Ga.App. at 733, 258 S.E.2d 540, the Court nevertheless concludes that under Georgia case law the Nichols's contention must fail. The general rule to be applied is the following:

In cases in which an issue is presented as to whether a gunshot wound sustained by an insured in a motor vehicle can be considered an injury arising out the use of the vehicle, the general rule is set forth in *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga.App. 562, 564[, 236 S.E.2d 550] ... that "where a connection appears between the 'use' of the vehicle and the discharge of the firearm and resulting injury such as to render it more likely that the one grew out of the other, it comes within the coverage defined."

*Westberry v. State Farm Mutual Automobile Insurance Company*, 179 Ga.App. 700, 701, 347 S.E.2d 688 (1986).

There must be more of a connection between the use of the vehicle and the discharge of the firearm and resulting injury than mere presence in the vehicle when the injury was sustained. *Id.* at 702, 347 S.E. 2d 688. The injury must have " 'originated from,' had its origin in, 'grown out of,' or 'flowed from' the use of the [motor vehicle as a] vehicle." *Id.* at 701, 347 S.E.2d 688, *quoting Franklin v. Southern Guaranty Ins. Co.*, 160 Ga.App. 279, 281, 287 S.E.2d 274 (1981) (brackets in original).

The court in *Insurance Company of North America v. Dorris*, 161 Ga.App. 46, 288 S.E.2d 856 (1982), explained that "arising out of" does not mean proximate cause in a strict legal sense; almost any causal connection will do, but it cannot be extended to something distinctly remote. *Id.* at 47, 288 S.E.2d 856. Each case turns on its own precise individual facts. *Id.*

The tragic facts surrounding Ms. Nichols's death fall between the facts of two cases where no causal connection was found, *Westberry* and *Washington v. Hartford Accident etc., Co.*, 161 Ga.App. 431, 288 S.E.2d 343 (1982), and *Parker*, where such connection was found. In *Westberry*, a taxi driver was killed with a handgun as he was robbed while seated in a parking lot in the front seat of his taxi. The court affirmed summary judgment for the insurer on the grounds that there was no causal connection between the use of the vehicle and the injury. The injury did not originate from, have its origin in, grow out of, or flow from the use of the taxi as a vehicle. *Westberry*, 179 Ga.App. at 702, 347 S.E.2d 688.

In *Washington*, the court found no causal connection where a passenger on a school bus was assaulted with a pistol. The court held that the injury "resulted from a deliberate assault which took place in the vehicle simply because that is where the victim happened to be when the assailant came 'gunning' for him." *Id.* at 432, 288 S.E.2d 343.

In *Parker*, the court stated the facts as follows:

[T]he plaintiff [was] the owner of a Ford automobile insured by the appellant through relevant portions of the UM coverage.... Originally, the tortfeasor was driving with her permission, she also occupying the vehicle. When the tortfeasor stopped in an isolated area other than that to which the permission extended, she remonstrated and reached out to the car switch, whereupon he attacked and stabbed her. She twice escaped from the car but was twice recaptured and beaten. The tortfeasor then placed her in a semi-conscious condition on the road behind the car, placed the vehicle in reverse and ran over her body, then put the car in gear driving the wheels over her body a second time and made his escape, leaving her for dead.

*Id.*, 150 Ga.App. at 736, 258 S.E.2d 540. The court affirmed summary judgment for the insured on an uninsured motorist claim because the vehicle became "uninsured" when permission to drive was revoked when the victim reached for the car switch, the incident was an "accident" when seen from the eyes of the victim, and the injuries "arose from" the use of the vehicle.

*Parker* is distinguishable from the instant case, because, there, a substantial portion of the injuries were caused directly by the use of the vehicle when the victim was run over. The *Parker* court emphasized that uninsured motorist coverage applies to insured persons not only when they are riding in an automobile but also *"while pedestrians if the injury is caused by an uninsured motorist." Id.* at 735, 258 S.E.2d 540 (emphasis in original). The

court thus appears to have reasoned that the victim was essentially a pedestrian when she received these injuries. The injuries arose from the use of the vehicle, just as if an insured pedestrian crossing the street were hit by an uninsured motorist.

The instant case is more analogous to *Westberry* and *Washington*. Ms. Nichols's murder did not arise from the use of her car. Her car, like the taxi in *Westberry*, was merely the *locus* of this violent, brutal crime. Her presence in her car, like the *Westberry* driver's presence in his taxi, was incidental to the murder. It was not a cause of the murder.

It is true that McCormick *used* Ms. Nichols's car to drive her to the parking lot, where she was killed. But this use is too remote. Mere presence in the car is insufficient. *See Westberry*, 179 Ga.App. at 702, 347 S.E.2d 688. Thus, if the sole basis were that McCormick drove her to the murder scene, then coverage would exist even if he then walked her several miles from the car before killing her. Under such a theory, whenever a victim's car is involved in any way in his or her murder, there would be coverage under automobile insurance policies like the present. No intent to cover such occurrences can be found in the contract between the parties in this case.[3] The case law compels the conclusion that Ms. Nichols's death did not arise from the use of her vehicle as a vehicle. Therefore, she did not have automobile insurance that covered this tragic incident under either the personal injury protection or the uninsured motorist provisions of her policy. Summary judgment on Counts I and II of

---

**3.** The defendants also assert in their brief that McCormick and Donna were "using" the car for "parking" and that the murder resulted from Donna's rejection of McCormick's romantic advances. They base this assertion on a statement made by McCormick to an undercover officer. McCormick made this statement when telling the officer that he knew how the murder had occurred, but that it was done by another. The defendants assert that this scenario "matches in all respects the killing as it actually took place. Same is certainly the most plausible explanation of how this killing occurred." Response of Defendants at 4.

The defendants state that McCormick later admitted to the officer that he had done the crime. They omit, however, that when he later admitted to having murdered Ms. Nichols, he admitted that he committed this brutal murder for $3,500. *See* Transcript at 689.

It is thus factually incorrect that the car was being "used" for "parking." But even were it correct, this use would be too remote. The murder was a deliberate act. This asserted use of the car, even if true, would not in any way have caused this senseless murder.

the complaint therefore must be GRANTED.

### B. Medical Payments Coverage

█ In Count III of its complaint, SAMI claims that the medical payments coverage provisions of Ms. Nichols's policy also did not provide coverage. The Court concludes, however, that Ms. Nichols was covered by these terms of the policy. That section of the policy provides as follows:

We will pay reasonable expenses incurred from necessary medical and funeral services because of bodily injury:

1.  Caused by accident; and
2.  Sustained by a covered person.

.       .       .       .       .

"Covered person" as used in this Part means:

1.  You or any family member:
    a.  while occupying; or
    b.  as a pedestrian when struck by;
    a motor vehicle designed for use mainly on public roads or a trailer of any type.

Exhibit A to the Complaint, Part B.

The plaintiff contends that even if Ms. Nichols's death can be considered an accident, there must be some causal connection between the injury and the use of the vehicle before coverage may be invoked. SAMI, however, cites no provision of the policy nor any case law to this effect. Neither has any been found by the Court.

Both the personal injury protection and the uninsured motorist protection provisions contain language which requires a causal link between the use of the vehicle and the injuries sustained. The provision for medical payments coverage contains no such provision. The Court will not write one into the contract.

The first requirement of the provision is that the bodily injuries and funeral expenses be caused by accident. Under the cases discussed above, *see, e.g., Parker*, 150 Ga.App. at 733, 258 S.E.2d 540, Ms. Nichols's murder was an "accident" when seen through her eyes. The second requirement is that the injuries be sustained by a "covered person," which is defined as the insured while occupying a motor vehicle designed for use mainly on public roads. This requirement also is satisfied because Ms. Nichols sustained her injuries while occupying her vehicle. Ms. Nichols was covered under the medical payments coverage provisions of her insurance policy with SAMI, and summary judgment shall be DENIED on this claim.

ACCORDINGLY, plaintiff's motion for summary judgment on its declaratory judgment complaint against Defendants Donald Nichols and Jo Ann Nichols is GRANTED as to Counts I and II, and DENIED as to Count III.

IT IS SO ORDERED.