John MITCHELL, Plaintiff,

v.

GLOBE LIFE AND ACCIDENT INSURANCE COMPANY, Defendants.

Civil Action File No. 4:06–CV–0134–HLM.

United States District Court, N.D. Georgia, Rome Division.

Nov. 13, 2007.

Christopher Lee Corbin, Farrar & Corbin, P.C., Summerville, GA, for Plaintiff.

Kenton Jones Coppage, Aaron Edward Pohlmann, Smith Moore, LLP, Atlanta, GA, for Defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a breach of contract action in which Plaintiff seeks to require Defendant to pay sums allegedly due under an accidental death insurance policy. The case is before the Court on Plaintiff's Motion for Summary Judgment [31], on Defendant's Motion for Summary Judgment [37], on Plaintiff's Notice of Objection to the Affidavit of Barbara Fuller [45],[1] and on Plaintiff's Notice of Objection to the Affidavit of Debbie Burnett [46].[2]

---

1. Plaintiff has objected to paragraph 9 of the Affidavit of Barbara Fuller as containing inadmissible hearsay. The Court has not considered that portion of Ms. Fuller's Affidavit in connection with this Order. The Court therefore denies as moot and without prejudice Plaintiffs Notice of Objection to the Affidavit of Barbara Fuller.

2. Plaintiff also has objected to the Affidavit of Debbie Burnett, which contains information concerning a polygraph examination taken by Plaintiff. Plaintiff argues that Ms. Burnett's testimony is inadmissible because polygraph

## I. Background

### A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. *Harris v. Coweta County, Ga.*, 433 F.3d 807, 811 (11th Cir.2005), *rev'd on other grounds,* — U.S. ——, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). This statement does not represent actual findings of fact. *Jones v. Am. Gen. Life Ins. Co.*, 370 F.3d 1065, 1069 n. 1 (11th Cir.2004) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 n. 9 (11th Cir. 2001)). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

### 1. The Parties

Plaintiff is a Georgia resident. (Notice Removal ¶ 3.) Defendant is a Delaware corporation with its principal place of business in Oklahoma. (*Id.*)

### 2. Applications for Insurance

On or about June 11, 2004, Sherry Crowe applied for life insurance with Southern Farm Bureau Life Insurance Company. (PL's Statement of Material

examinations, in general, are unreliable, and because the examination given by Ms. Burnett to Plaintiff was flawed. Plaintiff should have raised those challenges in a *Daubert* Motion, rather than a Notice of Objection, to provide Defendant with an opportunity to respond to those challenges. In any event, the Court has not considered Ms. Burnett's Affidavit in connection with the this Order. The Court therefore denies as moot and without prejudice Plaintiff's Notice of Objection to the Affidavit of Debbie Burnett.

Facts ("PSMF") ¶ 21; Def.'s Resp. PSMF ("DRPSMF") ¶ 21.) On June 28, 2004, Southern Farm Bureau Life Insurance Company denied Ms. Crowe's application for life insurance. (PSMF ¶ 22; DRPSMF ¶ 22.)

On or about June 28, 2004, Ms. Crowe applied for accidental death insurance coverage with Defendant. (Dep. of Pl. Ex. 8; PSMF ¶ 1; DRPSMF ¶ 1.) The application/enrollment form that Ms. Crowe submitted named Plaintiff as the beneficiary. (PSMF ¶ 7; DRPSMF ¶ 7.)

### 3. Issuance of the Insurance

Effective June 28, 2004, Defendant issued a certificate of accidental death insurance, evidenced by Certificate Number 14–M068674, on Ms. Crowe's life (the "Insurance"). (PSMF ¶ 2; DRPSMF ¶ 2.) The Insurance provided an accidental death benefit of $500,000. (PSMF ¶ 3; DRPSMF ¶ 3.)

Prior to her death, Ms. Crowe was the certificate holder for the Insurance. (PSMF ¶ 5; DRPSMF ¶ 5.) The Insurance identified Plaintiff as the primary beneficiary for the Insurance. (PSMF ¶ 8; DRPSMF ¶ 8.)

### 4. Ms. Crowe's Prior History

Ms. Crowe was an insulin-dependent diabetic, and also suffered from hypertension. (Def.'s Statement of Material Facts ("DSMF") ¶ 6; Pl.'s Resp. DSMF ("PRDSMF") ¶ 6.) Ms. Crowe had been hospitalized on more than one occasion for emergency treatment of problems related to diabetes, including diabetic ketoacidosis. (DSMF ¶ 7; PRDSMF ¶ 7.)

Ms. Crowe also suffered from bipolar disorder, for which she took Lithium. (DSMF ¶ 6; PRDSMF ¶ 6.) Ms. Crowe had a history of drug overdoses, including an overdose described as a suicide attempt. (DSMF ¶ 8; PRDSMF ¶ 8.)

In June 1993, Ms. Crowe received treatment at a hospital following an overdose; notes of that treatment reflect that Ms. Crowe stated that she did not "have anything to live for." (DSMF ¶ 9; PRDSMF ¶ 9.) Notes of that treatment reflect a diagnosis of "attempted suicide." (DSMF ¶ 10; PRDSMF ¶ 10.) A patient assessment form from that treatment indicates that Ms. Crowe described the overdose as deliberate, and reports that Ms. Crowe had overdosed eleven years earlier. (DSMF ¶¶ 11–12; PRDSMF ¶ 111–12.)

On May 10, 1997, Ms. Crowe received treatment at an emergency room following an overdose of tricyclic antidepressants. (DSMF ¶ 13; PRDSMF ¶ 13.)

On one occasion while living with Plaintiff, Ms. Crowe spoke about harming herself. (DSMF ¶ 14; PRDSMF ¶ 14.)

### 5. Ms. Crowe's Death and the Investigation

Shortly after midnight on August 13, 2004, an automobile registered to Plaintiff and Ms. Crowe was discovered engulfed in flames on West Armuchee Road near Summerville, Georgia. (DSMF ¶ 15; PRDSMF ¶ 15.) The vehicle was pointed in a northerly direction, and was resting against a guardrail on the southbound side of the roadway. (DSMF ¶ 16; PRDSMF ¶ 16.)

After firefighters extinguished the fire, they found a body inside the car. (DSMF ¶ 17; PRDSMF ¶ 17.) The body was burned beyond recognition. (DSMF ¶ 17; PRDSMF ¶ 17.)

Investigator Eddie Stroup, who reported to the scene, observed that the body's head was against the driver's door, the body's torso was somewhat in the driver's seat, and the body's legs were extended toward the passenger floorboard. (DSMF ¶ 18;

PRDSMF ¶ 18.) Based on the position of the body, Investigator Stroup concluded that the deceased person had not been driving the automobile. (DSMF ¶ 19; PRDSMF ¶ 19.)

Investigator Stroup also concluded that there had not been a car wreck. (DSMF ¶ 20; PRDSMF ¶ 20.) Investigator Stroup could see no significant damage to the car, other than damage from the fire. (DSMF ¶ 21; PRDSMF ¶ 21.) Investigator Stroup observed what appeared to be "little skint marks" on the guardrail for some distance behind the car, indicating that the car might have lightly "skimmed" the guardrail at places. (DSMF ¶ 22; PRDSMF ¶ 22.)

A later analysis conducted by the Fire Marshal revealed that the car's driver's side floorboard had been doused with gasoline and that the fire had been set intentionally. (DSMF ¶ 23; PRDSMF f 23.) The fire investigator reported: "In my opinion, this fire originated in the driver's area of the vehicle with the use of gasoline as an accelerant. It is my opinion that this fire was intentionally and deliberately set." (DSMF ¶ 24; PRDSMF ¶ 24.) The investigators found no evidence of a gas can in the car. (DSMF ¶ 25; PRDSMF ¶ 25.)

On March 27, 2006, Plaintiff's counsel wrote to Investigator Stroup and asked Investigator Stroup to confirm that Plaintiff was not a suspect in Ms. Crowe's death. (DSMF ¶ 26; PRDSMF ¶ 26.) Investigator Stroup declined to eliminate Plaintiff as a suspect. (DSMF ¶ 27; PRDSMF ¶ 27.) According to Investigator Stroup, Plaintiff remains a suspect in Ms. Crowe's death. (Aff. of Eddie Stroup Ex. 8.) The investigation of Ms. Crowe's death remains open. (DSMF ¶ 29; PRDSMF ¶ 29.) There are no suspects in Ms. Crowe's death other than Plaintiff and

his brother, Robert Mitchell, who is now deceased. (DSMF ¶ 30; PRDSMF ¶ 30.)

The body found in the car later was identified as Ms. Crowe's body, and Ms. Crowe was pronounced dead as of August 13, 2004. (PSMF ¶ 6; DRPSMF ¶ 6; PI. Dep. Ex. 14 (death certificate).) Plaintiff contends that Ms. Crowe died as the result of a homicide; however, the death certificate for Ms. Crowe states that her cause of death remains undetermined. (PI.Dep. Ex.14.)

An autopsy was performed on Ms. Crowe's body. (DSMF ¶ 51; PRDSMF ¶ 51.) The autopsy report indicates that the manner of Ms. Crowe's death and the cause of her death were undetermined. (DSMF ¶ 52; PRDSMF ¶ 52.) Indeed, the medical examiner opined:

> Autopsy evaluation of the body of this unfortunate victim was significant for atherosclerotic coronary artery disease and mild tobacco-related changes in the lungs. However, the degree of destruction of the body by fire makes it impossible to rule out blunt trauma or stabbing, and the destruction of tissue limits toxicologic evaluation. While soot was found on microscopic evaluation of the lungs, it was not of the kind normally associated with smoke inhalation and is more suggestive of contamination with charred debris. Carbon monoxide was not found in the blood; it cannot be determined that the victim was alive at the time of the fire. Forensic anthropologic consultation was unrevealing. Thus, while it is possible that this is a sudden death due to thermal burn, it cannot be conclusively shown or ruled out. Similarly, it cannot be determined whether the victim was alive or dead at the time of the fire. The cause of death is thus undetermined.

In view of the circumstances surrounding the death, the manner is classified as undetermined.

(DSMF ¶ 53; PRDSMF ¶ 53.)

On March 11, 2005, the Chattooga County coroner signed the death certificate for Ms. Crowe. (Pl.Dep.Ex.14.) On March 14, 2005, the coroner filed the death certificate for Ms. Crowe. (*Id.*)

Plaintiff contends that he was not in Chattooga County at the time of Ms. Crowe's death. (Pl. Dep. at 145–49 & Ex. 23.) Defendant acknowledges, for purposes of the instant Motions, that Plaintiff was not in Chattooga County at the time Ms. Crowe's body was found. (PSMF ¶ 20; DRPSMF ¶ 20.)

On March 30, 2007, Plaintiff took a polygraph examination, which was conducted at the Rome, Georgia, police department. (DSMF ¶¶ 38–39; PRDSMF ¶¶ 38–39.) Defendant contends that the results of the polygraph examination, which included questions relating to the cause of Ms. Crowe's death, showed significant deception. Plaintiff, however, argues that the polygraph examination was flawed, that polygraph examinations are generally unreliable, and that this polygraph examination in particular is unreliable.

Plaintiff contends that he does not know what caused Ms. Crowe's death. (DSMF ¶ 43; PRDSMF ¶ 43; Pl. Dep. at 64.) Additionally, Plaintiff has "no clue" whether Ms. Crowe died from a result of sickness. (DSMF ¶ 44; PRDSMF ¶ 44; Pl. Dep. at 64.) Plaintiff also testified that he has "no clue" whether Ms. Crowe committed suicide. (DSMF ¶ 45; PRDSMF ¶ 45; Pl. Dep. at 64.) Plaintiff further stated that he does not know whether Ms. Crowe was murdered. (DSMF ¶ 46; PRDSMF ¶ 46; Pl. Dep. at 65.) Plaintiff simply testified that the police informed him that Ms. Crowe had an automobile accident, and stated that, other than this information, he has "no clue as to what has happened." (DSMF ¶¶ 47–48; PRDSMF ¶¶ 47–48; Pl. Dep. at 64.) Plaintiff further believes that his brother, Robert Mitchell, had nothing to do with Ms. Crowe's death. (DSMF ¶ 49; PRDSMF ¶ 49; Pl. Dep. at 122, 138, 151.) Plaintiff contends that Ms. Crowe's death resulted from an automobile accident. (DSMF ¶ 50; PRDSMF ¶ 50; Pl. Dep. at 136.)

Neither the Chattooga County Sheriff's Department nor any known law enforcement agency is in possession of any physical evidence linking Plaintiff with Ms. Crowe's death. (PSMF ¶ 15; DRPSMF ¶ 15.)

### 6. Plaintiff's Notice to Defendant

On September 19, 2004, Plaintiff, through counsel, provided written notice to Defendant of Ms. Crowe's death. (PSMF ¶ 10; DRPSMF ¶ 10.) Specifically, Plaintiff's counsel wrote to Defendant, enclosing a copy of the Insurance certificate. (DSMF ¶ 31; PRDSMF ¶ 31.) To Plaintiff's knowledge, this was the first contact from him or from someone acting on his behalf to Defendant concerning his claim for benefits under the Insurance. (DSMF ¶ 32; PRDSMF ¶ 32.) Plaintiff does not believe that anything prevented him from contacting Defendant earlier than September 19, 2004. (DSMF ¶ 33; PRDSMF ¶ 33.) Defendant, however, knew of Ms. Crowe's death prior to September 19, 2004. (PSMF ¶ 12; DRPSMF ¶ 12.)

On at least two occasions, Defendant wrote to Plaintiff or his attorney, enclosing a claim form that Defendant requested Plaintiff complete and return to Defendant with other information. (DSMF ¶ 34; PRDSMF ¶ 34.) Plaintiff contends that he was legally incapable of obtaining certain documents requested in Defendant's letters, including a physician's statement

completed by Ms. Crowe's family physician, a certified death certificate showing the cause and manner of death, and executorship papers. (Pl.Dep.Exs.11–12.)

Defendant heard nothing from Plaintiff or his attorney until March 24, 2005, when Plaintiff's counsel wrote and enclosed a completed claim form. (DSMF ¶ 35; PRDSMF ¶ 35.) Plaintiff offered no reason for that delay, except to state that "[t]hey hadn't released a lot of the paperwork on it" and that his attorney "was supposed to be handling it." (DSMF ¶ 36; PRDSMF ¶ 36; Pl. Dep. at 132.) Plaintiffs attorney did not enclose paperwork with the completed claim form. (DSMF ¶ 37; PRDSMF ¶ 37.)

On February 10, 2006, Plaintiff, through counsel, resubmitted a claimant statement for benefits under the Insurance. (PSMF ¶ 17; DRPSMF ¶ 17.)

### 7. Provisions of the Insurance

The Insurance contains a provision pertaining to "Accidental Death Benefit" that provides: "Upon receipt of due proof of the Accidental Death of the Insured while coverage on such Insured is in force, We will pay the Accidental Death Benefit Shown in the Certificate Schedule." (DSMF ¶ 1; PRDSMF ¶ 1; Pl. Dep. Ex. 8 at 001.) The Insurance defines the term "Accidental Death" as follows: "Death due to Accidental Bodily Injury caused by an Accident while this insurance is in force; the death must occur within 90 days after the date of the Accident, directly and independently of all other causes." (DSMF ¶ 2; PRDSMF ¶ 2; PL Dep. Ex. 8 at 004.) The Insurance defines an "Accidental Bodily Injury" as: "Unexpected traumatic damage to the Insured's body, of external origin." (DSMF ¶ 3; PRDSMF ¶ 3; PL Dep. Ex. 8 at 004.) Finally, the Insurance defines the term "Accident" as "[a] fortuitous event, unforeseen and unintended."

(DSMF ¶ 4; PRDSMF ¶ 4; Pl. Dep. Ex. 8 at 004.)

The Insurance contains a notice provision stating:

Written notice of claim must be given within 20 days after Accidental Death or as soon as reasonably possible. Written notice can be given to Us at Our Administrative Office in Oklahoma City, Oklahoma. Notice should include Your name and Your Certificate Number.

(PSMF ¶ 11; DRPSMF ¶ 11; DSMF ¶ 5; PRDSMF ¶ 5; Pl. Dep. Ex. 8 at 005.) The Insurance also provides:

CLAIM FORMS: When We receive the notice of claim, We will send You forms for filing proof of Accidental Death. If these forms are not given to you within 15 days, You will meet proof of Accidental Death requirements by giving Us a written statement of the nature and extent of the Accidental Death within the time limit stated in the Proof of Death provision.

(PSMF ¶ 13; DRPSMF ¶ 13; DSMF ¶ 5; PRDSMF ¶ 5; Pl. Dep. Ex. 8 at 005.) The Insurance further states:

Proof of Death: Written proof of Accidental Death must be given within 180 days after the Accidental Death of the Insured. If it was not reasonably possible to give written proof in the time required, We may not deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless the claimant was legally incapable of doing so.

(PSMF ¶ 14; DRPSMF ¶ 14; DSMF ¶ 5; PRDSMF ¶ 5; Pl. Dep. Ex. 8 at 005.)

### B. Procedural Background

On or about May 5, 2006, Plaintiff filed this lawsuit in the Superior Court of Chat-

tooga County, Georgia. (Notice Removal ¶ 1.) Plaintiff asserted that Defendant failed to pay accidental death benefits to Plaintiff, as required under the Insurance. On or about May 16, 2006, Plaintiff served Defendant with process, (*Id.* ¶ 2.) On June 14, 2006, Defendant removed the case to this Court. (Docket Entry No. 1.)

On September 7, 2007, Plaintiff filed his Motion for Summary Judgment. (Docket Entry No. 31.) On October 1, 2007, Defendant filed its Motion for Summary Judgment. (Docket Entry No. 37.) The briefing process for both Motions is complete, and the Court therefore finds that the Motions are ripe for resolution by the Court.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears "the burden of demonstrating the satisfaction of this standard, by presenting 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of any genuine, material factual dispute." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 975 (11th Cir.2005) (quoting Fed.R.Civ.P. 56(c)), *cert. denied,* 546 U.S. 872, 126 S.Ct. 377, 163 L.Ed.2d 164 (2005). Once the moving party has supported its motion adequately, the nonmovant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Castleberry v. Goldome Credit Corp.,* 408 F.3d 773, 786 (11th Cir. 2005).

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Harris,* 433 F.3d at 811. The Court also must "construe 'all reasonable doubts about the facts in favor of the non-movant.'" *Michael Linet, Inc. v. Vill. of Wellington, Fla.,* 408 F.3d 757, 761 (11th Cir.2005) (quoting *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)). Further, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir.2003). Finally, the Court does not make factual determinations. *Jones,* 370 F.3d at 1069 n. 1 (citing *Wooden,* 247 F.3d at 1271 n. 9).

The Court further observes that the standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant issue. As the United States Court of Appeals for the Sixth Circuit has noted:

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. But where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

*Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting William W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove

genuine doubt from the issue altogether.' " *Franklin v. Montgomery County, MD,* Civil Action No. DKC 2005–0489, 2006 WL 2632298, at *5 (D.Md. Sept. 13, 2006) (quoting *Hoover Color Corp. v. Bayer Corp.,* 199 F.3d 160, 164 (4th Cir.1999)) (alteration in original).

Where, as here, the parties file cross-motions for summary judgment, a court " 'must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.' " *Franklin,* 2006 WL 2632298, at *5 (quoting *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.2003)). The Court applies the standards discussed above when ruling on the motions for summary judgment. *Id.* "The court must deny both motions if it finds there is a genuine issue of material fact, '[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.' " *Id.* (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed.1983)).

Keeping the above standards in mind, the Court first addresses Plaintiff's Motion for Summary Judgment, and then turns its attention to Defendant's Motion for Summary Judgment.

## III. Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment, contending that he is entitled to payment of accidental death benefits under the Insurance as a matter of law, and that he also is entitled to penalties under O.C.G.A. § 33–4–6 due to Defendant's bad faith refusal to pay benefits. Defendant argues that Plaintiff is not entitled to summary judgment in his favor because Plaintiff failed to give Defendant timely notice and proof of death, as required by the Insurance, because Plaintiff has not shown

that Ms. Crowe's death was an "Accidental Death," as required by the Insurance, and because Defendant cannot pay benefits to Plaintiff under Georgia's "slayer statute," O.C.G.A. § 33–25–13. Defendant further contends that it is not liable to Plaintiff for bad faith penalties under O.C.G.A. § 33–4–6. The Court addresses those arguments in turn.

### A. Whether Plaintiff Failed to Give Timely Notice

Under Georgia law, a court construing an insurance policy must attempt "to ascertain the intention of the parties by looking to the insurance contract as a whole." *Ryan v. State Farm Mut. Auto. Ins. Co.,* 261 Ga. 869, 872, 413 S.E.2d 705, 707 (1992). A court first must take into consideration the ordinary and legal meaning of the words used in the policy. *Id.* "Exceptions and exclusions to coverage must be construed strictly in favor of the insured and against the insurer." *Furgerson v. Cambridge Mut. Fire Ins. Co.,* 237 Ga.App. 637, 639, 516 S.E.2d 350, 352 (1999). If, however, the policy language is "clear, explicit, and unambiguous," the court must enforce the policy as written. *Ryan,* 261 Ga. at 872, 413 S.E.2d at 707; *Furgerson,* 237 Ga.App. at 639, 516 S.E.2d at 352.

The purpose of a notice provision " 'is to enable the insurer to inform itself promptly concerning the accident, so that it may investigate the circumstances, prepare for a defense, if necessary, or be advised whether it is prudent to settle any claim arising therefrom.' " *Clarke v. Unum Life Ins. Co. of Am.,* 14 F.Supp.2d 1351, 1354 (S.D.Ga.1998) (quoting *Se. Express Sys., Inc. v. S. Guar. Ins. Co.,* 224 Ga.App. 697, 701, 482 S.E.2d 433, 436 (1997)). Under Georgia law, " '[t]imely notice to the insurer of a claim or occurrence is a condition precedent to the insurer's duty to

defend or pay.' " *Equitable Life Assurance Soc'y of U.S. v. Studenic,* 77 F.3d 412, 415 (11th Cir.1996) (quoting *Ins. Co. of N. Am. v. Waldroup,* 462 F.Supp. 161, 162 (M.D.Ga.1978)) (applying Georgia law). Consequently, an "insured must comply with the notice requirements contained in the policy, absent a sufficient legal justification for the delay." *Clarke,* 14 F.Supp.2d at 1354. The justification proffered by the insured "must have 'rendered it impossible for the condition to be complied with.' " *Id.* (quoting *Wolverine Ins. Co. v. Sorrough,* 122 Ga.App. 556, 561, 177 S.E.2d 819, 822 (1970)).

A court must examine the insured's delay in providing notice "under the circumstances to determine if it was justified and reasonable." *Clarke,* 14 F.Supp.2d at 1354. Whether an insured gave timely notice generally "is a question of fact for a jury." *Richmond v. Ga. Farm Bureau Mut. Ins. Co.,* 140 Ga.App. 215, 219, 231 S.E.2d 245, 249 (1976). Under the certain facts and circumstances of a particular case, however, the court may find "that an insured's delay in giving notice of an accident to his insurer was unjustified for summary judgment, [and] the court may rule on the question as a matter of law." *Id.* (citations omitted); *see also Clarke,* 14 F.Supp.2d at 1354 n. 5 (collecting cases).

■ Here, the Insurance contained the following relevant provisions with respect to notice. First, the Insurance stated:

Written notice of claim must be given within 20 days after Accidental Death or as soon as reasonably possible. Written notice can be given to Us at Our Administrative Office in Oklahoma City, Oklahoma. Notice should include Your name and Your Certificate Number.

(PSMF ¶ 11; DRPSMF ¶ 11; DSMF ¶ 5; PRDSMF ¶ 5; PL Dep. Ex. 8 at 005.) The Insurance also provides:

CLAIM FORMS: When We receive the notice of claim, We will send You forms for filing proof of Accidental Death. If these forms are not given to you within 15 days, You will meet proof of Accidental Death requirements by giving Us a written statement of the nature and extent of the Accidental Death within the time limit stated in the Proof of Death provision.

(PSMF ¶ 13; DRPSMF ¶ 13; DSMF ¶ 5; PRDSMF ¶ 5; PI. Dep. Ex. 8 at 005.) The Insurance further states:

Proof of Death: Written proof of Accidental Death must be given within 180 days after the Accidental Death of the Insured. If it was not reasonably possible to give written proof in the time required, We may not deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than 1 year from the time specified unless the claimant was legally incapable of doing so.

(PSMF ¶ 14; DRPSMF ¶ 14; DSMF ¶ 5; PRDSMF ¶ 5; PI. Dep. Ex. 8 at 005.)

The Court finds that Plaintiff has not met his burden of showing that he provided notice to Defendant in a timely fashion. Plaintiff clearly failed to provide written notice of his claim to Defendant within twenty days of Ms. Crowe's death, as required under the Insurance. Although the Insurance allows this written notice to be given "within 20 days after Accidental Death or as soon as reasonably possible," Plaintiff has offered no justification for his failure to contact Defendant earlier. In fact, although Plaintiff initially testified that he did not recall the reason for the delay, he stated that he did not believe that anything prevented him from contacting Defendant earlier. Under those circumstances, Plaintiff has not met his burden to prove that he complied with the

Insurance's requirement to give notice of Ms. Crowe's death within twenty days or as soon as reasonably possible thereafter.

Plaintiff also may argue that Defendant excused him from complying with the Insurance's notice requirement because Defendant forwarded claim forms to Plaintiff after learning of Ms. Crowe's death. O.C.G.A. § 33–24–40, however, forecloses this argument by providing that furnishing forms for reporting a loss or claim will not be deemed to constitute a waiver of a provision of an insurance policy or a waiver of a defense of the insurer under a policy. O.C.G.A. § 33–24–40.[3] This argument therefore fails.

■ Plaintiff also appears to argue that law enforcement officials orally informed Defendant of Ms. Crowe's death. Even if Defendant received oral notice of Ms. Crowe's death, this oral notice would not satisfy the written notice requirement contained in the Insurance, as there is no indication that the notice allegedly provided by law enforcement officials also indicated that Plaintiff intended to file a claim for benefits. *Lathem v. Sentry Ins.*, 845 F.2d 914, 917 (11th Cir.1988) ("The oral notification must indicate not only that an accident occurred but also that the insured intended to file a claim."); *Gurley v. Ford Motor Credit Co.*, 163 Ga.App. 875, 876, 296 S.E.2d 171, 172 (1982) (noting oral notice did not comply with provision of insurance policy requiring written notice). Further, there is no evidence that Defendant acted upon the alleged oral notice so as to waive the written notice requirement of the Insurance. *Lathem*, 845 F.2d at 917 ("If an agent of the insurer is orally notified of a claim by the insured within a reasonable time after the accident, and if at that time the agent denies liability under the policy, then the insurer has waived the right to written notice of the claim.").

Further, Plaintiff failed to submit the Proof of Death required under the Insurance to Defendant within 180 days after Ms. Crowe's death. Indeed, Plaintiff did not submit his completed claimant's statement to Defendant within 180 days of Ms. Crowe's death. Plaintiff has offered no explanation for this delay, other than to state that much of the "paperwork" concerning Ms. Crowe's death had not been released, and his attorney "was supposed to be handling it." (Pl. Dep. at 132.) Plaintiff, however, submitted a completed claim form in March 2005, but enclosed no other "paperwork" with it. (*Id.* Ex. 13.) Under those circumstances, Plaintiff certainly is not entitled to summary judgment on the issue of providing timely proof of death.

In sum, Plaintiff has not shown that no reasonable trier of fact could conclude that Plaintiff failed to provide timely notice and proof of death to Defendant, as required under the Insurance. Plaintiff consequently is not entitled to summary judgment in his favor on his claim that

---

3. O.C.G.A. § 33–24–40 provides:
 Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer under the policy:
 (1) Acknowledgment of the receipt of notice of loss or claim under the policy;
 (2) Furnishing forms for reporting a loss or claim, for giving information relative to the loss or claim, or for making proof of loss or receiving or acknowledging receipt of any forms or proofs completed or uncompleted; or
 (3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any loss or claim.
 O.C.GA. § 33–24–40.

Defendant failed to pay benefits under the Insurance.

### B. Accidental Death

■ Plaintiff next contends that Ms. Crowe's death was accidental, as defined by the Insurance. The Insurance defines the term "Accidental Death" as follows: "Death due to Accidental Bodily Injury caused by an Accident while this insurance is in force; the death must occur within 90 days after the date of the Accident, directly and independently of all other causes." (DSMF ¶ 2; PRDSMF ¶ 2; Pl. Dep. Ex. 8 at 004.) · The Insurance defines an "Accidental Bodily Injury" as: "Unexpected traumatic damage to. the Insured's body, of external origin." (DSMF ¶ 3; PRDSMF ¶ 3; PI. Dep. Ex. 8 at 004.) Finally, the Insurance defines the term "Accident" as "[a] fortuitous event, unforeseen and unintended." (DSMF ¶ 4; PRDSMF ¶ 4; PI. Dep. Ex. 8 at 004.)

A plaintiff seeking to recover under an accidental death policy first must prove that the insured's death was accidental under the terms of the insurance policy. *Equitable Life Assurance Soc'y of U.S. v. Fry,* 386 F.2d 239, 247 (5th Cir.1967) [4]; *see also Wright v. Am. Home Assurance Co.,* 488 F.2d 361, 363 (10th Cir.1973) (noting party who seeks to recover under accidental death policy must show death was accidental under terms of policy). The insurer then bears the burden of showing "that death did not come under the policy coverage but fell under one of the exclusions of the policy." *Fry,* 386 F.2d at 247.

■ Under Georgia law, "[a]n intentional act may be deemed an accident[ ] when, viewed from the perspective of the victim, it is something unseen, unusual, and unexpected and not caused by the victim's own

misconduct." *State Auto. Mut. Ins. Co. v. Nichols,* 710 F.Supp. 1359, 1362 (N.D.Ga. 1989). Thus, a murder still may qualify as an accidental death.

Here, however, the evidence indicates that Ms. Crowe suffered from severe diabetes that required hospitalization on more than one occasion, that Ms. Crowe suffered from bipolar disorder, for which she took Lithium, and that Ms. Crowe previously had been hospitalized for suicide attempts. The evidence also indicates that the medical examiner could not determine Ms. Crowe's cause of death, and that the medical examiner could not rule out stabbing or blunt force trauma. Under those circumstances, Plaintiff has not met his burden of showing that Ms. Crowe's death qualified as an Accidental Death under the Insurance. Plaintiff clearly is not entitled to summary judgment requiring Defendant to pay him benefits under the Insurance.

### C. Slayer Statute

Defendant also argues that it could not pay benefits to Plaintiff under the Insurance because Georgia's "slayer statute," O.C.G.A. § 33–25–13, prohibited it from doing so. O.C.G.A. § 33–25–13 provides:

No person who commits murder or voluntary manslaughter or who conspires with another to commit murder shall receive any benefits from any insurance policy on the life of the deceased, even though the person so killing or conspiring be named beneficiary in the insurance policy. A plea of guilty or a judicial finding of guilt not reversed or otherwise set aside as to any of such crimes shall be prima-facie evidence of guilt in determining rights under this Code section. . All right, interest, es-

---

**4.** Opinions of the Fifth Circuit issued prior to October 1, 1981, the date marking the creation of the Eleventh Circuit, are binding precedent on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

tate, and proceeds in such an insurance policy shall go to the other heirs of the deceased who may be entitled thereto by the laws of descent and distribution of this state, unless secondary beneficiaries be named in the policy, in which event such secondary beneficiaries shall take.

O.C.G.A. § 33–25–13. "Pursuant to the plain language of the statute, an individual may be barred from receiving the benefits of a life insurance policy even in the absence of a criminal conviction if it is determined under the appropriate standard of proof that the individual committed murder or voluntary manslaughter or conspired to commit murder." *Slakman v. Cont'l Cas. Co.*, 277 Ga. 189, 190, 587 S.E.2d 24, 26 (2003). "Criminal proceedings against the individual may give rise to prima facie evidence of guilt for purposes of O.C.G.A. § 33–25–13 only upon the entry in the criminal prosecution of a guilty plea or a judicial finding of guilt not reversed or otherwise set aside." *Id.* The Georgia Supreme Court has held that "under O.C.G.A. § 33–25–13 an individual's conviction in a criminal prosecution for the murder or voluntary manslaughter of the insured may serve as prima facie evidence of guilt in a civil proceeding brought pursuant to O.C.G.A. § 33–25–13 upon either the exhaustion of the individual's right to file a direct appeal or the expiration of time within which a first direct appeal could have been timely filed." *Id.*, 587 S.E.2d at 27.

Here, the evidence indicates that Plaintiff remains a suspect in Ms. Crowe's death. Under those circumstances, it is far from clear that Georgia's slayer statute would not preclude Plaintiff's recovery under the Insurance. Consequently, Plaintiff is not entitled to summary judgment on his claim for benefits under the Insurance.

## D. Bad Faith Penalties

 Plaintiff also seeks summary judgment with respect to his claim for bad faith penalties under O.C.GA § 33–4–6. O.C.G.A. § 33–4–6(a) provides, in relevant part:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33–4–6(a). A plaintiff asserting a claim under O.C.G.A. § 33–4–6 must prove that the insurer made its refusal to pay the claim in bad faith. *S. Fire & Cas. Ins. Co. v. Nw. Ga. Bank*, 209 Ga.App. 867, 868, 434 S.E.2d 729, 730 (1993). "Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.'" *Id.* (quoting *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga.App. 155, 158, 308 S.E.2d 382 (1983)); *see also Homick v. Am. Cas. Co.*, 209 Ga.App. 156, 157, 433 S.E.2d 318, 318 (1993) ("Georgia courts have consistently held that penalties for bad faith are not authorized where there is a disputed question ·of fact or doubtful question of law.").

 The question of whether an insurer acted in bad faith ordinarily is for the jury. *Homick*, 209 Ga.App. at 157, 433 S.E.2d at 318 (quoting *Int'l Indem. Co. v. Collins*, 258 Ga. 236, 238, 367 S.E.2d 786 (1988)). However, "'when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the

court should disallow imposition of bad faith penalties.'" *Id.* (quoting *Collins,* 258 Ga. at 238, 367 S.E.2d 786).

As previously discussed, Plaintiff failed to demonstrate that Ms. Crowe's death was accidental, so as to require Defendant to pay benefits under the Insurance. Additionally, Plaintiff failed to give notice and proof of death information to Defendant as required by the Insurance. Further, a legitimate question exists as to whether Plaintiff is ineligible to receive benefits under the Insurance as a result of Georgia's slayer statute. Under those circumstances, Defendant's refusal to pay benefits to Plaintiff under the Insurance was not in bad faith. Plaintiff thus is not entitled to summary judgment in his favor on his bad faith claim under O.C.G.A. § 33–4–6.

### E. Conclusion

In sum, Plaintiff has failed to show that he is entitled to summary judgment in his favor on his claim for benefits under the Insurance or on his claim for bad faith penalties under O.C.G.A. § 33–4–6. The Court therefore denies Plaintiff's Motion for Summary Judgment.

### IV. Defendant's Motion for Summary Judgment

Defendant also has moved for summary judgment in its favor, arguing that it is entitled to summary judgment because: (1) Plaintiff failed to provide it with notice or proof of death, as required by the Insurance; (2) Plaintiff failed to demonstrate that Ms. Crowe's death was an Accidental Death, as required by the Insurance; (3) Georgia's slayer statute precludes payment of the Insurance benefits to Plaintiff; and (4) Defendant did not act in bad faith for purposes of O.C.G.A. § 33–4–6 by re-

fusing to pay benefits to Plaintiff. The Court evaluates those arguments in turn, viewing the evidence in the light most favorable to Plaintiff.

### A. Notice and Proof of Death

As discussed *supra* Part III.A, Plaintiff failed to give written notice of Ms. Crowe's death to Defendant within twenty days of Ms. Crowe's death, as required by the Insurance. Indeed, Plaintiff failed to give written notice of Ms. Crowe's death to Defendant until September 19, 2004—well after the twenty-day period for giving notice elapsed. For the reasons discussed *supra* Part III.A, the oral notice of Ms. Crowe's death that law enforcement officials allegedly provided to Defendant did not satisfy the notice requirement of the Insurance. Plaintiff thus did not comply with the twenty-day notice period of the Insurance.[5]

Plaintiff, however, contends that he gave written notice of Ms. Crowe's death "as soon as reasonably possible," as required by the Insurance. Plaintiff, however, has adduced no evidence to show why it was not reasonably possible for him to give Defendant written notice of Ms. Crowe's death at an earlier date. In fact, although Plaintiff initially testified that he did not recall the reason for the delay, he stated that he did not believe that anything prevented him from contacting Defendant earlier. Under those circumstances, Plaintiff did not comply with the Insurance's requirement to give notice of Ms. Crowe's death within twenty days or as soon as reasonably possible thereafter.

Further, as discussed *supra* Part III A, Plaintiff failed to comply with the Insurance's Proof of Death provision. Plaintiff failed to submit the Proof of Death re-

---

**5.** Similarly, as discussed *supra* Part III.A, Defendant did not waive the notice requirement of the Insurance by sending claim forms to Plaintiff.

quired under the Insurance to Defendant within 180 days after Ms. Crowe's death. Indeed, Plaintiff did not submit his completed claimant's statement to Defendant within 180 days of Ms. Crowe's death. Plaintiff has offered no explanation for this delay, other than to state that much of the "paperwork" concerning Ms. Crowe's death had not been released, and his attorney "was supposed to be handling it." (Pl. Dep. at 132.) Plaintiff, however, submitted a completed claim form in March 2005, but enclosed no other "paperwork" with it. (*Id.* Ex. 13.) Under those circumstances, Plaintiff has provided no reasonable justification for failing to provide Defendant with Proof of Death within 180 days after Ms. Crowe's death.

In sum, the Court finds that Plaintiff failed to comply with the notice and Proof of Death provisions of the Insurance. Consequently, Plaintiff is not entitled to benefits under the Insurance.

### B. Accidental Death

As discussed *supra* Part III. B., the facts and inferences therefrom, viewed in the light most favorable to Plaintiff, do not demonstrate that Ms. Crowe's death was an Accidental Death, as defined by the Insurance. Because Plaintiff failed to show that Ms. Crowe's death was an Accidental Death, as defined by the Insurance, Plaintiff is not entitled to benefits under the Insurance.

### C. Slayer Statute

Defendant also argues that it could not pay benefits to Plaintiff under Georgia's slayer statute. The Court applies the authority discussed *supra* Part III.C. when addressing this contention.

At this point, although Plaintiff still remains a suspect in Ms. Crowe's death, no criminal charges have been brought against Plaintiff. Plaintiff clearly has not pleaded guilty to, or been convicted of, charges of murder, voluntary manslaughter, or conspiracy to commit murder, and Defendant thus has no prima facie evidence of Plaintiff's guilt for purposes of the slayer statute. Although "an individual may be barred from receiving the benefits of a life insurance policy even in the absence of a criminal conviction if it is determined under the appropriate standard of proof that the individual committed murder or voluntary manslaughter or conspired to commit murder," Defendant has not demonstrated, by a preponderance of the evidence or beyond a reasonable doubt, that Plaintiff committed murder, committed voluntary manslaughter, or conspired to commit murder. *Slakman,* 277 Ga. at 190, 587 S.E.2d at 26. A genuine dispute thus remains as to whether Georgia's slayer statute would bar Plaintiff from recovering benefits under the Insurance. Defendant thus cannot obtain summary judgment based on this argument.

### D. Bad Faith Penalties

Finally, Defendant contends that it is entitled to summary judgment on Plaintiff's claim for bad faith penalties under O.C.G.A. § 33–4–6. The Court applies the authority discussed *supra* Part III.D. when addressing this argument.

Even viewing all the evidence and inferences therefrom in the light most favorable to Plaintiff, Defendant had reasonable grounds for refusing to pay benefits under the Insurance to Plaintiff. As previously noted, Defendant had at least reasonable grounds to believe that Plaintiff had failed to comply with the Insurance's notice and Proof of Death requirements. Defendant also had at least reasonable grounds to believe that Ms. Crowe's death did not qualify as an Accidental Death under the Insurance. For those reasons, Defendant did not act in bad faith by refusing to pay Insurance benefits to Plaintiff. Defendant

consequently is entitled to summary judgment on this claim.

### E. Summary

In sum, the Court concludes that no genuine dispute remains as to whether Plaintiff failed to give timely notice and Proof of Death under the Insurance or as to whether Plaintiff failed to demonstrate that Ms. Crowe's death was accidental. The Court also concludes that no genuine dispute remains with respect to Plaintiff's bad faith claim under O.C.G.A. § 33–4–6. The Court therefore grants Defendant's Motion for Summary Judgment.

### V. Conclusion

ACCORDINGLY, the Court **DENIES** Plaintiff's Motion for Summary Judgment [31], **GRANTS** Defendant's Motion for Summary Judgment [37], **DENIES AS MOOT AND WITHOUT PREJUDICE** Plaintiff's Notice of Objection to the Affidavit of Barbara Fuller [45], and **DENIES AS MOOT AND WITHOUT PREJUDICE** Plaintiff's Notice of Objection to the Affidavit of Debbie Burnett [46]. The Court **DISMISSES** this case. The Court **DIRECTS** the Clerk to **CLOSE** this case.